**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**PADUCAH DIVISION**
**CIVIL ACTION NO. 5:14-CV-00183-TBR**

ABIGAIL A. TUCKER                                                                              Plaintiff,

v.

RODNEY HEATON, et al.                                                                       Defendants.

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court upon the motion to dismiss filed by Defendant Clifford West. (Docket No. 7.)  Plaintiff Abigail A. Tucker has responded, (Docket No. 9), and West has replied, (Docket No. 13.)  Fully briefed, this matter stands ripe for adjudication.  For the reasons set forth below, the Court will GRANT IN PART and DENY IN PART West's motion.

**Factual Background**

Tucker was previously employed by both Caldwell County, Kentucky, as an animal control officer and by the City of Princeton, Kentucky, as a police officer.  On June 22, 2012, she was charged with abuse of public trust and tampering with public records in the Caldwell Circuit Court. Approximately three months later, the circuit court dismissed the indictment without prejudice.  (Docket No. 1-1 at 5.)  Both Caldwell County and the City of Princeton subsequently terminated Tucker's employment.

In her complaint, originally filed in the Circuit Court of Caldwell County, Kentucky, Tucker asserts a number of claims against the City of Princeton, Caldwell County, and various public officials, including Caldwell County Magistrate Rodney Heaton, Caldwell County Magistrate Bobby Lewis, Caldwell County Judge-Executive Brock Thomas, Princeton Chief of Police Don Weedman, Caldwell County employee Donna Thomas, and West, an investigator and detective for the Commonwealth of

1

Kentucky's Fifty-Sixth Judicial Circuit.  Tucker alleges that the defendants targeted her in a scheme designed to result in her termination from employment.  According to Tucker, the defendants sought to "intimidate, embarrass, [and] defame" her by causing her to be prosecuted for crimes that she did not commit.  (Docket No. 1-1 at 4-5.)

Tucker names West among the defendants, suing him both individually and in his official capacity as an "investigator and detective" employed by the Commonwealth of Kentucky.  (Docket No. 1-1 at 3.)  Specifically, she contends that West conspired with four co-defendants to taint the grand jury proceedings that resulted in her indictment.  She contends that he made certain misrepresentations of fact to certain unnamed witnesses in the grand jury proceeding, causing those witnesses to provide false testimony.  (Docket No. 1-1 at 5.)  Her claims against West include conspiracy, invasion of privacy, malicious prosecution, violation of civil rights, intentional interference with a contractual relationship, and outrageous conduct.  She seeks both compensatory and punitive damages for these claims, as well as injunctive relief.

## Legal Standard

Federal Rule of Civil Procedure Rule 12(b)(6) allows a defendant to seek dismissal of a complaint that fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In reviewing a Rule 12(b)(6) motion, the Court will presume that the complaint's factual allegations are true and will draw all reasonable inferences in the light most favorable to the plaintiff.  *Total Benefits Planning Agency v. Anthem Blue Cross & Blue Shield,* 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v. Deggendorf,* 716 F.2d 1101, 1105 (6th Cir. 1983)).  To adequately state a claim, a complaint must contain "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

The Supreme Court has explained that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although plaintiffs need not provide "detailed factual allegations," they must furnish "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," or a "formulaic recitation of the elements of a cause of action." *Id.* (citing *Twombly*, 550 U.S. at 555). Courts must accept the plaintiff's factual assertions as true, but they "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (citing *Twombly*, 550 U.S. at 556).

Once the Court has separated the complaint's legal conclusions from its factual allegations, the Court must determine whether the remaining facts state a plausible claim for relief. A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556). The plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations omitted).

## Analysis

### I.    The federal pleading standard applies to state law claims removed to federal court.

As an initial matter, the Court addresses whether state or federal pleading standards apply to state law actions that have been removed to federal court. Tucker emphasizes that she filed her complaint in a Kentucky state court and urges the Court to look to Kentucky's pleading requirements. (Docket No. 9 at 3.) Under Kentucky law, plaintiffs enjoy a more lenient notice pleading standard, where "[i]t is not necessary to state a claim with technical precision . . . as long as a complaint gives a defendant fair notice and identifies the claim." *Grand Aerie Fraternal Order of Eagles v. Carneyhan*, 169 S.W.3d 840, 844 (Ky. 2005) (applying Kentucky's Civil Rule 8.01). However, Tucker misperceives the effect of removal.

The Court first turns to the text of the Federal Rules of Civil Procedure. The Supreme Court adopted the Rules in response to Congress' invitation "to prescribe general rules of practice and

procedure and rules of evidence for cases in the United States district courts . . . ." 28 U.S.C. § 2072(a). Rule 1 provides that "[t]hese rules govern the procedure in the United States district courts in all suits of a civil nature . . . ." Important to the instant discussion, Rule 81(c) expressly provides that the Rules "apply to a civil action after it is removed from state court." Fed. R. Civ. P. 81(c)(1). The Supreme Court has explained, "This expansive language contains no express exceptions and indicates a clear intent to have the Rules . . . apply to all district court civil proceedings," including those removed from state courts. *Willy v. Coastal Corp.*, 503 U.S. 131, 135 (1992). The Sixth Circuit's pre-*Iqbal* precedent reflects this view. *See, e.g.*, *Granny Goose Foods v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 438 (1974) ("The Federal Rules of Civil Procedure, like other provisions of federal law, govern the mode of proceedings in federal court after removal.").

Moreover, the Supreme Court has endorsed broad application of the federal pleading standard. In *Iqbal*, the Supreme Court explained that *Twombly*'s plausibility standard applies not only to the antitrust context from which it arose, but to all civil cases in federal court.

> Though *Twombly* determined the sufficiency of a complaint sounding in antitrust, the decision was based on our interpretation and application of Rule 8. That Rule in turn governs the pleading standard "in all civil actions and proceedings in the United States district courts. Our decision in *Twombly* expounded the pleading standard for all civil actions[.]

*Iqbal*, 556 U.S. at 684 (citations and quotations omitted).

As a sister district court has noted, Sixth Circuit precedent accords with this view. *Vanhook v. Somerset Health Facilities, LP*, 2014 WL 7075265, at *2-3 (E.D. Ky. Dec. 15, 2014) (citing *Foust v. Stryker Corp.*, No. 2:10-cv-00005, 2010 WL 2572179, at *2 (S.D. Ohio Jun. 22, 2010); *Wilkey v. Hull*, 366 F. App'x 634, 637 (6th Cir. 2010) (unreported)). The Sixth Circuit has applied the federal pleading standard to state law cases in diversity claims; moreover, it has not indicated that whether the federal standard applies depends upon the source of the federal court's subject matter jurisdiction, or upon the origin of the substantive laws at the heart of the claim. *Id.* It follows, then, that the same reasoning governs actions removed from state court.

The preceding authorities indicate that once a complaint is removed to federal court, it is subject to the federal pleading requirements, including Rule 8 and the *Twombly-Iqbal* standard.  *See, e.g.*, *Maness v. Boston Scientific*, 751 F. Supp. 2d 962, 966-67 (E.D. Tenn. 2010).  Therefore, the Court will consider Tucker's complaint according to federal pleading standards rather than those of the Commonwealth.

**II.    Tucker's claims against West in his official capacity are barred.**

West correctly argues that Tucker's state law claims must be dismissed pursuant to Rule 12(b)(6) because state officials sued in their official capacities enjoy absolute immunity from liability.  Sovereign immunity derives from the principle that the state, its prosecutors, judges, and others performing its essential work, are entitled to an absolute immunity from suit.  *Autry v. Western Kentucky University*, 219 S.W.3d 713, 717 (Ky. 2007).  A claim against an individual in his official capacity is considered a claim against the underlying government entity; it is not a suit against the individual, but against the individual's office.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  When a government employee is sued in his official capacity, then, he is entitled to "the same immunity, if any, to which the [government] agency, itself, would be entitled."  *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001).  Accordingly, Tucker's claims against West in his official capacity are, in essence, claims against the Commonwealth.

Kentucky law governs whether sovereign immunity precludes a state tort action.  "It is an inherent attribute of a sovereign state that precludes that maintaining of any suit against the state unless the state has given its consent or otherwise waived its immunity."  *Yanero v. Davis*, 65 S.W.3d 510, 517 (Ky. 2001).  "Section 231 [of the Kentucky constitution] limits sovereign immunity to 'suits . . . against the Commonwealth.'"  *Kentucky Ctr. for the Arts Corp. v. Berns*, 801 S.W.2d 327, 329 (Ky. 1990).  The General Assembly has codified its intent to waive the Commonwealth's immunity from civil suit under only the narrowest circumstances:

> It is further the intention of the General Assembly to otherwise expressly preserve the sovereign immunity of the Commonwealth, any of its

cabinets, departments, bureaus or agencies or any of its officers, agents, or employees while acting in the scope of their employment by the Commonwealth of any of its cabinets, departments, bureaus or agencies in all other situation except where sovereign immunity is specifically and expressly waived as set forth by statute.

KRS 44.072.   The Kentucky Supreme Court has stated that in determining whether a suit is "against the Commonwealth," sovereign immunity extends to "'departments, boards or agencies that are such integral parts of state government as to come within regular patterns of administrative organization and structure.'"   *Id.* at 332 (quoting *Kentucky Region Eight v. Commonwealth*, 507 S.W.2d 489, 491 (Ky. 1974)).

Undoubtedly, the Commonwealth Attorney's office is among the "integral parts of state government" protected by sovereign immunity.   *Id.*; *see* Ky. Const. §§ 97, 231 (establishing the Commonwealth Attorney s as an arm of state government).   Therefore, the Commonwealth Attorney's office—and, by extension, West—is immune from suit unless the General Assembly has waived its immunity.   Ky. Const. § 231.   Tucker provides no authority suggesting that the General Assembly has waived immunity in the instant case, nor is the Court aware of such.

Furthermore, as a state official sued in his official capacity for damages, West enjoys absolute immunity from liability under the Eleventh Amendment to the United States Constitution.   *Mason v. Kentucky*, 2013 WL 1151978, at *3 (W.D. Ky. Mar. 19, 2013) (citing *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity."); *Boone v. Kentucky*, 72 F. App'x 306, 307 (6th Cir. 2003) ("Boone's request for monetary relief against the prosecutors in their official capacities is deemed to be a suit against the state and also barred by the Eleventh Amendment."); *CH*, *ex rel. Watkins v. Dvorak*, 2009 WL 500532, at *3 (N.D. Ind. Feb. 27, 2009) (finding Indiana prosecutors entitled to immunity under the Eleventh Amendment)).   Accordingly, Tucker's state law claims against West in his official capacity will be dismissed.

Finally, Tucker's 42 U.S.C. § 1983 claims against West must also be dismissed.  Section 19833 allows an individual to bring suit against any "person" who, while operating under color of state law, subjected that individual to a deprivation of his constitutional rights. "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Ky. v. Graham*, 473 U.S. 159, 166 (1985).  The Supreme Court has limited the scope of §1983 defendants, explaining "neither a State nor its officials acting in their official capacities are 'persons'" for purposes of § 1983 liability." *Will*, 491 U.S. at 71 (explaining that an official capacity suit against a state official is no different from a suit against the state itself).  In his official capacity, then, West is not a "person" under the meaning of the statute. Therefore, the Court will dismiss Tucker's § 1983 official capacity claim against him.

### III.     Tucker's claims against West in his individual capacity may proceed.

The Court next turns to Tucker's claims against West in his individual capacity.  West first maintains that qualified official immunity shields him from Tucker's state law claims.  As discussed above, public officials sued in their official capacities are entitled to absolute immunity.  When sued in their individual capacities, though, public officials "enjoy only qualified official immunity, which affords protection from damages liability for good faith judgment calls made in a legally uncertain environment." *Yanero v. Davis*, 65 S.W.3d 510, 521-22 (2001).   Qualified official immunity makes certain that "[o]fficials are not liable for bad guesses in gray areas." *Rowan County v. Sloas*, 201 S.W.3d 469, 475 (Ky. 2006) (citations omitted).  "Most government officials are not expected to engage in the kind of legal scholarship normally associated with law professors and academicians." *Id.* (quotations and citation omitted).  As the Supreme Court has noted, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)).

The affirmative defense of qualified official immunity consists of three elements.  The official must have been (1) performing a discretionary act or function (2) within the scope of his authority and (3) in good faith. *Yanero*, 65 S.W.3d at 522.  The burden of establishing qualified official immunity rests with the public officer or employee, who must make a prima facie showing "that the act was performed

within the scope of his/her discretionary authority." *Id.* at 523.  If the public official makes such a showing, the burden then "shifts to the plaintiff to establish by direct or circumstantial evidence that the discretionary act was not performed in good faith." *Id.*

With regard to the first prong of the analysis, discretionary acts are those that involve "the exercise of discretion and judgment, or personal deliberation, decision, and judgment." *Yanero*, 65 S.W.3d at 522.  By contrast, a public official is not entitled to immunity for the negligent performance of a ministerial act—that is, one "that requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Id.*

> Discretionary or judicial duties are such as necessarily require the exercise of reason in the adaptation of means to an end, and discretion in determining how or whether the act shall be done or the course pursued. Discretion in the manner of the performance of an act arises when the act may be performed in one of two or more ways, either of which would be lawful, and where it is left to the will or judgment of the performer to determine in which way it shall be performed.

*Collins v. Commonwealth of Ky. Natural Resources & Envtl. Protection Cabinet*, 10 S.W.3d 122, 125 (Ky. 1999) (citation omitted).

Turning to the second element, which concerns whether West acted within the scope of his authority, the Court must consider whether a defendant's alleged actions were "within the general scope of the official's authority." *Sloas*, 201 S.W.3d 469 at 487 (citation and brackets omitted).  "In other words, an act is within the official's jurisdiction if it is not manifestly or palpably beyond his authority." *Id.* at 487-88 (citation omitted).  "To be within that perimeter, and therefore . . . privileged, [i]t is only necessary that the action bear some reasonable relations to and connection with the duties and responsibilities of the official." *Id.* at 488 (quotations and citation omitted).

Although West insists that his decision to investigate the circumstances that resulted in Tucker's indictment were both discretionary and within the scope of his employment, the Court cannot find that

West has satisfied his prima facie showing.  The Court is inclined to agree that that the decisions surrounding West's investigation constituted discretionary acts.  However, whether West acted within the scope of his authority is less clear, particularly given the broad allegations against him.  The memorandum accompanying West's motion to dismiss is largely silent as to this inquiry:  although West emphasizes that the investigation resulted in two felony indictments, he provides little more in the way of argument.  Perhaps this arises from difficulty in ascertaining the particular actions of which Tucker complains:  she does not furnish the names of the witnesses that West allegedly deceived, she does not indicate how many witnesses were so affected, and she does not provide the specific misinformation that was allegedly disseminated.  But despite these shortcomings, the Court cannot grant West's motion to dismiss the individual state law claims against him based on qualified official immunity at this stage in the litigation.

Likewise, the Court will deny West's motion to dismiss Tucker's § 1983 claim against him in his individual capacity.  As West correctly notes, "United States Supreme Court precedent in § 1983 cases provides a complete defense for a government official performing discretionary functions so long as his or her actions were reasonably consistent with the rights allegedly violated."  *Jefferson County Fiscal Court v. Peerce*, 132 S.W.3d 824, 837 (Ky. 2004).  However, if his actions violated a clearly established right, the official may be held liable for the violation.  *Id.*  The Court's inquiry, then, focuses upon the reasonableness of the official's action:

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, . . . but is to say that in light of pre-existing law the unlawfulness must be apparent.

*Id.* (quoting *Anderson v. Creighton*, 483 U.S . 635, 640 (1987).  "To successfully state a claim under 42 U.S.C. § 1983, a plaintiff must identify a right secured by the United States Constitution and the deprivation of that right by a person acting under color of state law."  *Russo v. City of Cincinnati*, 953

F.2d 1036, 1042 (6th Cir. 1992).  Moreover, a successful claimant "must establish that the defendant acted knowingly or intentionally to violate his or her constitutional rights such that mere negligence or recklessness is insufficient." *Ahlers v. Schebil*, 188 F.3d 365, 373 (6th Cir. 1999) (citations omitted).

West does not dispute that he is a person within the scope of § 1983 and that he acted under the color of state law.  Although he argues that his investigation of Tucker fell soundly within his job duties, a broad reading of the complaint suggests otherwise.  Tucker alleges that West participated in a conspiracy that targeted her employment; she suggests that his role in the scheme consisted largely of misleading grand jury witnesses to procure false testimony that would lead to a baseless indictment, Such actions would not, of course, be within the course of his job duties.  Moreover, she has adequately alleged that West's purported actions violated her clearly established constitutional rights. *Cf. Hinchman v. Moore*, 312 F.3d 198, 205-06 (6th Cir. 2002) ("Falsifying facts to establish probable cause to arrest and prosecute an innocent person is of course patently unconstitutional . . . .").  Although the Court makes no judgment as to the merits of Tucker's claim at this stage, she has at least stated a claim.  Accordingly, West's motion to dismiss Tucker's § 1983 claim against him will be denied.

### Conclusion and Order

Defendant Clifford West having filed a motion to dismiss; Plaintiff Abigail Tucker having filed her response thereto; the Court having reviewed this matter and being otherwise fully and sufficiently advised; IT IS HEREBY ORDERED that West's motion to dismiss, (Docket No. 7), is hereby GRANTED IN PART AND DENIED IN PART.