UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:14-CV-00183-TBR

ABIGAIL A. TUCKER                                                    Plaintiff,

v.

RODNEY HEATON, et al.                                              Defendants.

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court upon the motion for judgment on the pleadings filed by Defendants Rodney Heaton, Bobby Lewis, Brock Thomas, and Caldwell County, Kentucky.  (Docket No. 14.)  Plaintiff Abigail A. Tucker has responded, (Docket No. 15), and Defendants have replied, (Docket No. 16).  Fully briefed, the matter stands ripe for adjudication.  For the reasons set forth below, the Court will GRANT IN PART and DENY IN PART Defendants' motion.

**Factual Background**

As stated in the Court's previous Memorandum Opinion, Tucker was previously employed by both Caldwell County, Kentucky, as an animal control officer and by the City of Princeton, Kentucky, as a police officer.  On June 22, 2012, a Caldwell Circuit grand jury indicted her with Abuse of Public Trust and Tampering with Public Records.  Approximately three months later, the circuit court dismissed the indictment without prejudice.  (Docket No. 1-1 at 5.)  Both Caldwell County and the City of Princeton subsequently terminated Tucker's employment in December 2012.

In her complaint, Tucker alleges that Defendants conspired to "intimidate, embarrass, [and] defame" her, ultimately seeking to cause Tucker's termination from employment.  She asserts that Defendants accomplished this by causing her to be prosecuted for crimes of which she was innocent.  (Docket No. 1-1 at 4-5.)  While her allegations provide little specificity, she directly contends that West

caused grand jury witnesses to believe untrue statements about her in an effort to procure false testimony. (Docket No. 1-1 at 5.)  She further submits that Brock Thomas and Donna Thomas provided untrue testimony to the grand jury.  (Docket No. 1-1 at 5.)

Tucker names as Defendants the City of Princeton, Caldwell County, and various public officials, including Caldwell County Magistrate Rodney Heaton, Caldwell County Magistrate Bobby Lewis, Caldwell County Judge-Executive Brock Thomas, Princeton Chief of Police Don Weedman, Caldwell County employee Donna Thomas, and Clifford West, an investigator and detective for the Commonwealth of Kentucky's Fifty-Sixth Judicial Circuit.  She raises eight claims:  (1)  vicarious liability against Caldwell County and Princeton; (2) conspiracy against Heaton, Lewis, Brock Thomas, West, Donna Thomas, and Weedman; (3) invasion of privacy against all Defendants; (4) defamation against Heaton and Lewis; (5) malicious prosecution against Heaton, Lewis, Brock Thomas, West, and Donna Thomas; (6) violation of civil rights against all Defendants; (7) intentional interference against Heaton, Lewis, Brock Thomas, West, and Donna Thomas; and (8) outrageous conduct against Heaton, Lewis, Brock Thomas, West, Donna Thomas, and Weedman.  (*See* Docket No. 1-1.)

## Legal Standard

Rule 12(c) of the Federal Rules of Civil Procedure provides, "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  The Court analyzes a Rule 12(c) motion for judgment on the pleadings under the same standard as a Rule 12(b)(6) motion for failure to state a claim.  *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).  Therefore, to survive a Rule 12(c) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  " A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although "[t]he plausibility standard is not akin to a 'probability requirement,'" it requires "more than a

2

sheer possibility that a defendant has acted unlawfully." *Id.* The factual allegations in the complaint must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In considering a motion for judgment on the pleadings, the Court may examine the complaint and its exhibits, public records, items appearing in the record of the case, and exhibits attached to the motion so long as they are referenced in the complaint and are central to its claims. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). The Court must construe the complaint in the light most favorable to the non-movant, accepting all well-pleaded factual allegations as true—but it need not accept her legal conclusions or unwarranted factual allegations. *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). The motion will be granted only if the movant is entitled to judgment as a matter of law. *Id.*

Although the pleadings have closed and Defendants' motion is timely, their reply memorandum references portions of certain discovery materials—namely, a timeline of events that Tucker generated in response to Defendants' first set of interrogatories. Defendants have included this timeline as an exhibit to their reply memorandum.  (*See* Docket No. 16-1.)  Defendants rely upon his extraneous material in support of their argument that Tucker failed to satisfy the relevant statutes of limitations for several of her claims.  Because this document is neither contained nor referenced in the pleadings, the Court must either reject the evidence or treat the motion as one for summary judgment.  Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."); *see also Max Arnold & Sons, LLC v. W.L. Hailey & Co., Inc.*, 452 F.3d 494 (6th Cir. 2006) ("Because Plaintiff presented matters outside the pleadings with respect to Defendant's 12(c) motion, and because the district court did not exclude these matters, the district court should have converted the Rule 12(c) motion to a motion for summary judgment.").

Courts may convert a motion to dismiss into one for summary judgment so long as the parties are not "likely to be surprised by the proceedings." *See Salehpour v. Univ. of Tennessee*, 159 F.3d 199, 204 (6th Cir. 1998). Here, the Court is confident that Tucker was aware of the motion's conversion and was afforded a reasonable opportunity to respond to the extraneous material. Defendants expressly addressed this matter in the reply memorandum they submitted in late January, leaving Tucker ample time to seek leave to file a surreply, had she so desired. Nonetheless, the Court declines to consider Defendants' extraneous evidence at this stage. The timeline offers limited value at this stage, and the Court is unwilling to base a finding of summary judgment exclusively upon that document. Moreover, the docket reflects that the parties have scheduled numerous depositions to occur throughout July and August. The Court will permit the parties to continue engaging in discovery on Tucker's claims, as set forth below. Because the Court finds that conversion to summary judgment would be imprudent, it will not consider the timeline that accompanies Defendants' reply. *See Barrett v. Harrington*, 130 F.3d 246, 253 (6th Cir. 1997) (holding that district courts have "complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion.").

Finally, the Court again notes that contrary to Tucker's understanding, federal—not state—pleading standards apply to state law actions that have been removed to federal court. As more fully explained in the Court's prior Memorandum Opinion, Federal Rule of Civil Procedure 81(c)(1) provides that the Rules "apply to a civil action that is removed from state court." (*See* Docket No. 23, Memorandum Opinion.) Accordingly, the Court will consider Tucker's complaint under the federal pleading standards rather than those applied in Kentucky courts.

## Analysis

**I.    The Court will dismiss Tucker's state law tort claims against Caldwell County and against Heaton, Lewis, Brock Thomas, and Donna Thomas in their official capacities pursuant to the doctrine of sovereign immunity.**

Relying upon the doctrine of sovereign immunity, Defendants first move the Court to dismiss Tucker's claims against Caldwell County and against Heaton, Lewis, Brock Thomas, and Donna Thomas

in their official capacities.  (Docket No. 14-1 at 4.)  Tucker does not contest that well-settled principles of Kentucky law dictate this outcome.  (Docket No. 15 at 5-6.)  *See Jones v. Cross*, 260 S.W.3d 343, 345 (Ky. 2008) ("Because the county is a political subdivision of the state, it is 'cloaked' with sovereign or governmental immunity.") (citation omitted); *Kentucky v. Graham*, 473 U.S. 159 (1985) ("Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent.").  The Court will therefore dismiss these claims.

II.     **The Court will dismiss claims against Brock Thomas and Donna Thomas based on their allegedly false grand jury testimony.**

Defendants also move for the dismissal of Tucker's claims against Brock Thomas and Donna Thomas based on their allegedly false grand jury testimony.  Tucker concedes that both federal and state law establish that grand jury witnesses enjoy absolute immunity from civil suits based on their testimony. *See Rehberg v. Paulk*, 132 S. Ct. 1497 (2012) (concluding that a grand jury witness should enjoy the same immunity as witnesses at trial); *Reed v. Isaacs*, 62 S.W.3d 398 (Ky. Ct. App. 2000) ("[T]he testimony a witness given in the course of a judicial proceeding is privileged and will not support a cause of action against him.") (internal citation omitted).  The Court therefore finds that Brock Thomas and Donna Thomas are immune from any claim founded upon their testimony.

III.    **The Court will dismiss Tucker's conspiracy claim.**

Tucker alleges that Heaton, Lewis, Brock Thomas, West, Donna Thomas, and Weedman conspired to maliciously prosecute her and cause her to be terminated from her employment.  The Court presumes that she raises these claims under both state and federal law.[1]  Defendants move the Court to

---

[1] Tucker's complaint does not make clear her legal basis for proceeding with a federal conspiracy claim.  However, in response to Defendants' motion, she mentions 42 U.S.C. § 1985(3), which addresses conspiracies to interfere with civil rights.  The Court will therefore assume that she raises her claim pursuant to that statute, which provides, in relevant part:

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . in any case of conspiracy set forth in this section, if one or more

dismiss this claim pursuant to both the one-year statute of limitations and to the pleading standards articulated in the Federal Rules of Civil Procedure.  The Court will address each of these arguments in turn.

The Court first considers Defendants' statute of limitations argument.  Defendants assert that Tucker's conspiracy claim is untimely pursuant to the one-year statute of limitations for conspiracy established by KRS 413.140(1)(c) , which also governs federal claims.  *See Parrish v. Wilson*, 1998 WL 34201913 at *2 (W.D. Ky. Apr. 16, 1998) ("Because 42 U.S.C. § 1985 does not contain a statute of limitations, a federal district court must apply the statute of limitations of the state where it sits which would be applicable in the most closely analogous state action to determine the time within which the cause of action must be commenced.").  The limitations period commences only when the "'last overt act performed in compliance with the objective of the conspiracy has been accomplished.'"  *Parrish*, 1998 WL 34201913 at *2.

Defendants submit that Tucker has alleged only two overt acts:  Brock Thomas's and Donna Thomas's provision of allegedly false grand jury testimony.  Tucker has identified no actions of the alleged conspiracy that occurred after her indictment.  Assuming that the Thomas Defendants' testimony constitutes the "last overt act," Defendants reason that the conspiracy necessarily occurred before Tucker's indictment on June 22, 2012.  Because Tucker filed her complaint on September 2, 2014—more than one year after the date of the indictment—Defendants conclude that she failed to timely assert her claim.

---

persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

Tucker insists that she has alleged numerous other "specific and overt" acts undertaken in furtherance of the conspiracy. (*See* Docket No. 15 at 7-8.)  She offers with but one example:  her contention that the individual Defendants "embarked on a campaign, and took actions, to intimidate, embarrass, defame, and maliciously prosecute [Tucker] for crimes that [Tucker] did not commit."  (*See* Docket No. 15 at 7-8; Docket No. 1-1 at 4.)  These conclusory allegations shed little light.  However, also Tucker directs the Court to her complaint that the individual Defendants conspired "to cause [her] to be maliciously and wrongfully charged and prosecuted for two felony offenses *and* to have [her] terminated from her employment with Caldwell County and Princeton."  (Docket No. 1-1 at 8 (emphasis added)).  Tucker argues that her use of the conjunctive "and" indicates that the conspiracy's objectives were not limited to securing criminal charges, but also to cause Tucker's termination, humiliation, and defamation.  Of course, any continued harm she has suffered as a result of the initial conspiracy does not alter the limitations period.  *See McCune v. City of Grand Rapids*, 842 F.2d 903, 906 (6th Cir. 1988).[2]  However, the Defendants' alleged defamation of Tucker and termination of her employment may constitute overt acts that were committed in furtherance of the conspiracy.  Because the pleadings do not indicate that either the defamation or termination necessarily occurred outside the limitations period, Tucker's complaint need not be dismissed as time-barred.

However, Tucker nonetheless fails to state a claim for conspiracy.  Kentucky law dictates that to establish a civil conspiracy claim, a plaintiff must allege "a corrupt or unlawful combination or agreement

---

[2] In *McCune*, the Sixth Circuit considered whether actions that resulted in an individual's "wrongful arrest, wrongful incarceration, wrongful criminal prosecution, and wrongful suppression of exculpatory evidence" constituted a continuing tort for purposes of determining when his Section 1983 cause of action accrued.  Looking to the reasoning of sister circuits that confronted this question, the Sixth Circuit rejected Appellant McCune's argument that his injuries resulted from a continuing tort.  *Id.* at 905-06 (citing *Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981) (reasoning that "[a] continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation"); *Sanduch v. Muroski*, 684 F.2d 252, 254 (3d Cir. 1982) (rejecting argument that ongoing incarceration constituted a continuing tort); *Singleton v. City of New York*, 632 F.2d 185, 191 & n. 5 (2d Cir. 1980), *cert. denied*, 450 U.S. 920 (1981) (rejecting argument that section 1983 claims may not contain more than one cause of action and holding that numerous claims under section 1983 may have accrued on the same date); *Compton v. Ide*, 732 F.2d 1429, 1432-33 (9th Cir. 1984) (rejecting argument that a conspiracy's continuance beyond the date when injury or damage occurs extends the statute of limitations in a Section 1983 action)).

between two or more persons who do by concert of action an unlawful act, or to do a lawful act by unlawful means." *Peoples Bank of N. Ky., Inc. v. Crowe Chizek & Co.*, 277 S.W.3d 255, 261 (Ky. Ct. App. 2008) (quoting *Smith v. Bd. of Educ. of Ludlow, Ky.*, 94 S.W.2d 321, 325 (1936)).  Federal law is similar.  To state a claim for conspiracy to violate civil rights under § 1985(3), a plaintiff must allege that the defendants (1) conspired together (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws, (3) and committed an act in furtherance of the conspiracy (4) which caused injury to a person or property, or a deprivation of any rights or privileges of a citizen of the United States. *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994); *see also Moniz v. Cox*, 512 Fed. App'x 495, 499-500 (6th Cir. 2013).  Furthermore, the plaintiff must allege that the conspiracy was motivated by racial or other class-based invidiously discriminatory animus.

Turning first to Tucker's § 1985(3) claim, the Court notes that Tucker has alleged no facts that would indicate that either the allegedly false testimony or the broader conspiracy resulted from Defendants' racial animus.  Only one line of the complaint refers to racial issues: she contends that Lewis referred to her as a "Mexican whore."  (Docket No. 1-1 at 6.)  Even assuming that this comment—about which no additional detail is provided—evinced an invidiously discriminatory motivation on Lewis's part, the complaint does not reflect that the other alleged conspirators shared his view.  Moreover, Tucker does not suggest that Lewis acted jointly with any other Defendant to deprive her of equal protection due to her perceived ethnicity. "[W]henever an alleged conspirator's actions are directed against one as an individual, and not because that individual is a member of a particular class, a cause of action under § 1985(3) is not proved." *Weiss v. Patrick*, 453 F. Supp. 717, 724 (D.R.I. 1978), *aff'd*, 588 F.2d 818 (1st Cir. 1978), *cert. denied*, 442 U.S. 929.  Tucker's allegations are insufficient as a matter of law to establish a § 1985 violation.

Furthermore, it is "well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will be sufficient to state such a claim." *Guiterrez v. Lynch*, 826 F.3d 1534, 1538 (6th Cir. 1987) (discussing § 1983

8

conspiracy claims); *accord  Pahssen v. Maerrill Cmty. Sch. Dist.*, 668 F.3d 356, 366 (6th Cir. 2012), *cert. denied*, 133 S. Ct. 282 (2012).  "[I]n order to demonstrate the necessary conspiracy, a plaintiff must allege specific acts or means by which the defendants were alleged to have conspired."  *Bryant-Bruce v. Vanderbilt Univ., Inc.*, 974 F. Supp. 1127 (M.D. Tenn. 1997).

Here, Tucker alleges that the Defendants

> engaged in a conspiracy . . . to cause [her] to be maliciously and wrongfully charged and prosecuted for two felony offenses and to have [her] terminated from her employment with Caldwell County and Princeton, and each assisted, aided, abetted, acted in concert with, and conspired with the others in furtherance of that goal.

(Docket No. 1-1 at 8.)  This conclusory allegation consists of naked and indeterminate contentions—the "labels and conclusions" that *Twombly* deems insufficient.  *See* 550 U.S. at 555.  Although Tucker need not "'set out *in detail* the facts upon which [she] bases [her] claim,'" *id.* at n. 3 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)),  she must nonetheless make a "showing" of entitlement to relief rather than the "blanket assertion" offered here.  *Id.*   *See Twombly*, 550 U.S. at 565 n.10 (stating that where "complaint [] furnishes no clue" as to which defendants allegedly agreed or when and where the illicit agreement occurred, it fails to afford the adequate notice required by Fed. R. Civ. P. 8); *see also In re Travel Agent Com'n Antitrust Litig.*, 583 F.3d 896, 905 (6th Cir. 2009).

Tucker has identified only two actions approaching the requisite level of specificity:  the provision of purportedly false testimony by Brock Thomas and Donna Thomas, who enjoy absolute immunity for such claims.  She has failed to offer any facts to support her allegations that Defendants acted in concert to violate her rights or that would otherwise support the existence of a shared plan.  Because Tucker has pleaded little more than mere conclusions, her claim is insufficient to state a cause of action for conspiracy and will accordingly be dismissed.  *See Brooks v. Am. Broadcasting Companies, Inc.*, 932 F.2d 495 (6th Cir. 1991) (affirming denial of motion to amend to add § 1985 claim because "the allegations are too vague and conclusory to withstand a motion to dismiss").

**IV.    The Court will dismiss Tucker's defamation claim against Heaton but will permit her defamation claim against Lewis to proceed.**

The Court next turns to Tucker's defamation claim.  Under Kentucky law, the essential elements of defamation include "(1) defamatory language; (2) about the plaintiff; (3) which is published; and (4) which causes injury to reputation."  *Dennison v. Murray State Univ.*, 465 F. Supp. 2d 733, 749 (W.D. Ky. 2006) (citing *Columbia Sussex Corp. v. Hay*, 627 S.W.2d 270, 273 (Ky. Ct. App. 1981)).  Here, Tucker alleges that Tucker and Lewis "engaged in a continuing course of conduct to tell other persons things about [Tucker] which were not true, and Defendant Lewis referred to Abby as a 'Mexican whore.'" (Docket No. 1-1 at 6.)  She pleads no additional facts relevant to this claim.

As to Heaton, Tucker's claim consists of only "a formulaic recitation of the elements of a cause of action" and cannot survive Defendants' motion.  *Twombly*, 550 U.S. at 555.  To state a *prima facie* defamation claim, Tucker must allege that Defendants uttered a statement about her and that the statement was defamatory in nature.  Although precise quotations are not required, it is impossible to establish either element of the claim without identifying at least the general contours of the statement.  *See, e.g.*, *Puglise v. Regency Nursing, LLC*, No. 3:09-CV-00457, 2009 WL 3072900, at *1 (W.D. Ky. Sept. 23, 2009).  Tucker has failed to provide any such detail regarding Heaton's alleged statements, in either her complaint or her response to Defendants' motion; she offers nothing of their content, when they may have been made, or to whom Heaton allegedly published them.  Such claims are insufficient "to raise a right to relief above the speculative level" and will be dismissed.  *Assoc. of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).

Defendants also move to dismiss Tucker's defamation claim against Lewis, arguing that she has failed to establish the publication element of her claim.  "Publication requires that the words were intentionally or negligently communicated as to be heard by an understanding third party."  *Smith v. Westlake PVC Corp.*, 132 F.3d 34 (6th Cir. 1997) (citing *Columbia Sussex Corp. v. Hay*, 627 S.W.2d 270, 272 (Ky. Ct. App. 1981)).  The Court cannot agree with Defendants' conclusion.  Although Tucker has

not identified the audience of Lewis's purported statements, she alleges that he "engaged in a continuing course of conduct to tell other persons things about [Tucker] which were not true." (Docket No. 1-1 at 6.) At this early stage of litigation, the Court is satisfied that Tucker's allegation sufficiently pleads the publication requirement. Therefore, the Court finds that Tucker has sufficiently made out a *prima facie* cause of action against Lewis.

Defendants also assert that Tucker's defamation claim is time-barred. According to Kentucky law, the statute of limitations for actions based on libel or slander expires one year after the date of publication. *See* KRS § 413.140. Tucker is silent as to when Lewis allegedly published the defamatory statement about her. Nonetheless, Defendants reason that the alleged conduct must have predated Tucker's indictment on June 22, 2012. They therefore conclude that the defamation claim, raised on September 2, 2013, must be dismissed as untimely.

But Tucker's inexactitude does not render her complaint deficient. A plaintiff need not plead that her claim is not time-barred. To the contrary, Defendants must assert the running of the statute of limitations as an affirmative defense; they bear the burden of proving that the action is untimely. *Campbell v. Grand Trunk Western R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001). Because the Court can perceive a scenario wherein Tucker might prove that she was defamed within the one-year limitations period, it will not dismiss her claim. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) ("[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.").

## V.      Tucker's invasion of privacy claim is time-barred.

Count Three of Tucker's complaint alleges invasion of privacy, stating simply, "The aforementioned actions on behalf of Defendants constituted an unreasonable and unlawful invasion of Abby's right to privacy, as guaranteed by the Kentucky and Untied States Constitutions." (Docket No. 1-1 at 8.) The parties first disagree as to the statute of limitations that governs this claim.

Defendants contend that the same one-year statute of limitations that governs defamation claims applies here.  They rely upon *Branham v. Micro Computer Analysts*, 350 Fed. App'x. 35, 37 (6th Cir. 2009), wherein the Sixth Circuit concluded that because the plaintiffs' claims for libel, slander, and invasion of privacy were based upon the same conduct, the one-year statute of limitation that governed the first two claims also applied to the invasion of privacy claim.  *See id.* (citing *Lashlee v. Sumner*, 570 F.2d 107, 109 (6th Cir. 1978) ("The rule is firmly established in Kentucky that a statute of limitations which specifically mentions a recognized tort applies to all actions founded on that tort regardless of the method by which it is claimed the tort has been committed.").  They reason that because Tucker's invasion of privacy claim springs from the same acts underlying her defamation claim, the same one-year limitations period applies to each.

In response, Tucker rejects not only Defendants' logic but also that of the Sixth Circuit, arguing that *Branham* misapplied relevant Kentucky precedent.  She notes that no Kentucky statute specifically indicates the limitations period for an invasion of privacy action.  Instead, she points to state law's provision that actions for "an injury to the rights of the plaintiff, not arising on contract and not otherwise enumerated," must be brought within five years of the accrual of the cause of action.  KRS § 413.120(7).  Tucker therefore concludes that her invasion of privacy claim is subject to a five-year statute of limitations.

The Court is inclined to agree with Defendants as to the applicable statute of limitations, given *Branham*'s clear guidance and the reliance of both this Court and that of the Eastern District of Kentucky upon it.  *See, e.g.*, *Bargo v. Goodwill Indus. of Ky., Inc.*, 969 F. Supp. 2d 819 (E.D. Ky. 2013); *Madison Capital Co., LLC v. S & S Salvage, LLC*, 794 F. Supp. 735 (W.D. Ky. 2011).  For the same reasons set forth in the above discussion on defamation, however, the Court is not convinced that the events giving rise to the action necessarily occurred over a year before Tucker filed her complaint.  The Court is sympathetic to Defendants' reasoning—Tucker's complaint certainly suggests that the actions she alleges

predated her complaint by over a year.  However, the Court cannot say that another scenario is altogether impossible.  Accordingly, Tucker's complaint will not be dismissed as untimely.

Defendants also urge the Court to dismiss Tucker's invasion of privacy claim on its merits, contending that each of the actions Tucker alleges consist of oral communications and that such exchanges cannot give rise to an invasion of privacy claim.   Defendants correctly observe that in 1951, the Kentucky Supreme Court stated that "there can be no grant of redress for the invasion of privacy by oral publication."  *Pangallo v. Murphy*, 243 S.W.2d 496, 497 (Ky. 1951) (citing *Brents v. Morgan*, 299 S.W. 967 (Ky. 1927).  However, the Court is not convinced that this principle strictly governs today.

After *Pangallo*, The Kentucky Supreme Court adopted the definition of "invasion of privacy" established in the Restatement (Second) of Torts (1976).  *McCall v. Courier-Journal & Louisville Times*, 623 S.W. 882, 887 (Ky. 1981).   According to this definition, four distinct causes of action for invasion of privacy exist:  unreasonable intrusion upon the seclusion of another; appropriation of the other's name or likeness; unreasonable publicity given to the other's private life; or publicity that unreasonably places the other in a false light before the public.  Restatement (Second) of Torts (1976).  Though Tucker's chosen theory remains unclear, this distinction plays little role here.  Suffice to say that under certain theories, it appears that oral statements may give rise to the tort, as other jurisdictions have recognized. *See, e.g.*, *Winegard v. Larsen*, 260 N.W.2d 816, 819 (Iowa 1977) ("[S]poken words may be an actionable invasion of privacy.").[3]

---

[3] For example, to prevail on a false light invasion of privacy claim, a plaintiff must demonstrate (1) publicity by the defendant, (2) which is unreasonable, and (3) which "attributes to plaintiff characteristics, conduct or beliefs that are false and that he is placed before the public in a false position."  *Warinner v. North Am. Sec. Solutions, Inc.*,2008 WL 2355727, at *3 (W.D. Ky. June 5, 2008) (quoting *Stewart v. Pantry, Inc.*, 715 F. Supp. 1361, 1369 (W.D. Ky. 1988)).

The Court notes that in order to state a cause of action for false light invasion of privacy, the plaintiff must allege that the defendant gave "publicity" to a matter concerning the plaintiff according to the Restatement of Torts, to state a cause of action consistent with publicity that unreasonably places another in a false light before the public, the plaintiff must allege that the defendant gave "publicity" to a matter concerning the plaintiff—not that he merely "published" the statement, as in a defamation action.

Kentucky's adoption of the Restatement represents an evolution in its understanding of the "invasion of privacy" tort. Accordingly, the precedent of sixty-five years ago upon which Defendants rely may be antiquated. This uncertainty, coupled with the limited scope of the parties' argument on this point, convinces the Court that dismissal Tucker's invasion of privacy claim would be premature. Defendants' motion will be denied as to this claim.

**VI.    Tucker's malicious prosecution claim under federal law will be dismissed. The claim raised under Kentucky law may proceed.**

Count Five of Tucker's complaint alleges that Heaton, Lewis, Brock Thomas, West, and Donna Thomas "caused, orchestrated, acted in concert with each other and others, and conspired with each other and others to cause . . . [Tucker] to be charged and prosecuted for felony offenses" without probable cause. (Docket No. 1-1 at 9-10.) Tucker states that these criminal charges were ultimately terminated in her favor at the prosecuting attorney's request. (Docket No. 1-1 at 9-10.) Based on these allegations, she seeks damages for malicious prosecution.

In Kentucky, six basic elements comprise the tort of malicious prosecution:

> (1) [T]he institution or continuation of original judicial proceedings, either civil or criminal, or of administrative or disciplinary proceedings, (2) by, or at the instance, of the plaintiff, (3) the termination of such proceedings in defendant's favor, (4) malice in the institution of such proceeding, (5) want or lack of probable cause for the proceeding, and (6) the suffering of damage as a result of the proceeding.

*Raine v. Drasin*, 621 S.W.2d 895, 899 (Ky. 1981).

A malicious prosecution claim may also lie under federal law. The Sixth Circuit "recognize[s] a . . . constitutionally cognizable claim of malicious prosecution under the Fourth Amendment"

---

"Publicity" as it is used in this section, differs from "publication" as that term is used [regarding defamation]. "Publication, in that sense, is a word of art which includes any communication by the defendant to a third person. "Publicity, on the other hand, means that the matter is made public by communicating it to the public at large or to so many persons that the matter must be regarded as *substantially c*ertain to become one of public knowledge.

3 Restatement of Torts (Second), § 252(d), Comment A. Accordingly, one cannot satisfy the publicity requirement based on oral statements made to a small group of individuals.

encompassing "wrongful investigation, prosecution, conviction, and incarceration." *Barnes v. Wright*, 449 F.3d 709, 715-16 (6th Cir. 2006) (internal quotation marks omitted).  To prevail on such a claim, a plaintiff must prove four elements.

> First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant "ma[d]e, influence[d], or participate[d] in the decision to prosecute. . . .  Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution . . . .  Third, the plaintiff must show that, as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty, as understood in our Fourth Amendment jurisprudence . . . .  Fourth, the criminal proceeding must have been resolved in the plaintiff's favor.

*Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010) (internal quotations and citations omitted).  A plaintiff need not demonstrate malice in order to prevail on a Fourth Amendment claim for malicious prosecution.  *Id.* at 309.

Defendants first argue that Tucker's allegations fail to allege that they instituted the judicial proceedings against her, opining that the prosecuting attorney who obtained the indictment would have been a more fitting subject of her action.  Malicious prosecution claims are not limited to charging officials, however.  The Sixth Circuit has held that an investigating officer who "influence[d] . . . or participate[d] in the decision to prosecute" may also be subject to liability.  *Id.* "If police officers have been instrumental in the plaintiff's continued confinement or prosecution, they cannot escape liability by pointing to the decisions of prosecutors or grand jurors or magistrates to confine or prosecute him.  They cannot hide behind the officials whom they have defrauded."  *Id.* at 318 (quoting *Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir. 1988)).  This logic extends to the local government officials named in Tucker's complaint.  Because she is entitled to prove that they played a role in the commencement of the proceedings against her, the Court rejects Defendants' argument.

Defendants next contend that Tucker's claim must fail as a matter of law, as the grand jury indictment conclusively established the existence of probable cause.  Federal and state laws diverge on

this point.  As to the federal claim, "it has long been settled that the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer.'"  *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002) (quoting *Ex parte United States*, 287 U.S. 241, 250 (1932)).  Tucker does not dispute the fact of her indictment; rather, she insists that because the grand jury was misled by false testimony, the indictment was not "fair upon its face."  *See id.*  But Sixth Circuit precedent rejects this very argument.  In *Barnes v. Wright*, Barnes asserted a constitutional malicious prosecution claim; he insisted that the grand jury indicted him only because the defendants had mislead it, causing his improper arrest.  The Sixth Circuit determined that Barnes' claim could not survive, as he could not show the absence of probable cause.  Because he was indicted pursuant to the grand jury's determination—even if it was a faulty one—he had no basis for a constitutional claim.  *Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir. 2006) (citing *Higgason*, 288 F.3d at 877).  The same principle applies here.  Tucker was indicted pursuant to the grand jury's determination, which is determinative.  Her constitutional claim must be dismissed.

But the grand jury's finding of probable cause does not prove fatal to Tucker's claim under state law.  Although a grand jury indictment raises a presumption of probable cause, Kentucky precedents reflect that a plaintiff may rebut this presumption.  *Davidson v. Castner-Knott Dry Goods Co., Inc.*, 202 S.W.3d 597, 607 (Ky. Ct. App. 2006) (citing *Conder v. Morrison*, 121 S.W.2d 930, 931-32 (Ky. 1938).  *See also Conder*, 121 at 932 ("An acquittal opens the question so as to give the party prosecuted an opportunity, in an action for malicious prosecution, to offer evidence to repel the presumption growing out of the action of the grand jury.") (internal quotation and citation omitted).  Accordingly, Tucker's indictment does not necessarily bear upon her malicious prosecution claim under Kentucky law.

Finally, Defendants maintain that the Commonwealth Attorney dismissed the case against Tucker for technical or procedural reasons.  Because the case was not resolved on its merits, Defendants contend that Tucker did not receive the determination of innocence necessary to allege a malicious prosecution claim.  They point to *Shelton v. City of Taylor*, wherein the Sixth Circuit rejected the malicious

prosecution claim asserted by a plaintiff who pleaded no-contest and paid a fine. "This claim must fail as a matter of law," the court said, "because under the common law a plaintiff may not assert malicious prosecution unless the proceeding has ended in his favor." 92 Fed. App'x 178, 183 (6th Cir. 2004) (citing *Heck v. Humphrey*, 512 U.S. 477, 484 (1994)). The Sixth Circuit rejected Shelton's argument that his no-contest plea and the subsequent dismissal of the charge constituted an outcome in his favor, characterizing it as an impermissible "legal maneuver" and an "attempt[] to use his compromise with the judicial system to his advantage." *Id.* As such, the court determined that Shelton's plea precluded his malicious prosecution claim.

Tucker's case may yield a different outcome, as the face of her complaint reveals no such legal maneuvering. She does not indicate that the Commonwealth's dismissal of the case against her resulted from a compromise, nor does she suggest that procedural technicalities motivated the dismissal. The Court does not foreclose the possibility that Defendants may ultimately prove such motivations, which would likely prove fatal to Tucker's claims. *See Alcorn v. Gordon*, 752 S.W.2d 809, 812 (Ky. Ct. App. 1988) (finding that dismissal for technical or procedural reasons unrelated to the merits of the case does not constitute favorable termination of the action). Dismissal on this basis today, however, would be premature. Moreover, Defendants' emphasis that the case was dismissed without prejudice is of little moment, as "dismissal of a case—whether it be with or without prejudice—constitutes a 'final termination' for purposes of the tort [of malicious prosecution]." *Davidson v. Castner-Knott Dry Goods Co., Inc.*, 202 S.W.3d 597, 604 (Ky. Ct. App. 2006). *See also Davis v. Brady*, 291 S.W. 412, 413 (Ky. 1927) (establishing that "dismissal by the prosecuting authorities or by the prosecutor himself, and without the voluntary procurement of the defendant in the prosecution" constitutes a final termination for purposes of a malicious prosecution suit). Accordingly, Tucker's claim for malicious prosecution under state law survives Defendants' motion and will be allowed to proceed.

**VII.    Tucker's claims for violation of civil rights may proceed.**

17

Defendants next move the Court to dismiss Tucker's claims for violation of her civil rights pursuant to 42 U.S.C. § 1983 and Kentucky law.  The statute of limitations for §1983 actions is governed by the limitations period for personal injury cases in the state in which the cause of action arose.  *Wallace v. Kato*, 549 U.S. 384, 387 (2007).  In Kentucky, such actions are limited to the one-year period established by KRS § 413.140(1)(a).  *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990).  While state law establishes the statute of limitations for such actions, federal law dictates when the statute of limitations begins to run.  *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984).  According to federal law, the § 1983 statute of limitations accrues when the plaintiff knew or should have known of the injury that forms the basis of the claim alleged in her complaint.  *Ruff v. Runyon*, 258 F.3d 498, 500 (6th Cir. 2001).

Here, it is unclear when Tucker became aware of the alleged wrongful conduct that forms the basis of this claim—or indeed, precisely which conduct precipitates the claim at all.  In any event, though, the Court cannot say unequivocally that all allegedly wrongful conduct occurred prior to Tucker's indictment on June 22, 2012.  As such, it is not apparent that Tucker failed to seek timely relief for the alleged civil rights violations.  Her claim will not be dismissed on this basis.

## VIII.   Tucker's claim for intentional interference with a known contractual relationship will be dismissed.

Count Seven of Tucker's complaint alleges that Heaton, Lewis, Brock Thomas, West, and Donna Thomas committed intentional interference with a known contractual relationship by jeopardizing her employment with Princeton and Caldwell County.  Kentucky law does not establish a specific time limit for this claim.  However, as discussed above, "[t]he rule is firmly established that a statute of limitations applies to all actions founded on that tort regardless of the method by which it is claimed the tort has been committed."  *Lashlee*, 570 F.2d at 109 (citing *Skaggs v. Stanton*, 532 S.W.2d 442) (Ky. 1975)).

Tucker's claims are similar to those of *Lashlee*, where the "underlying wrong with which the complaint alleges [was] defamation by publication of a libelous report, and the claim of injury set out in

each count springs from the act of publication." *Id.* at 109.  That is, Tucker's "real purpose is to recover for the injury" of the alleged defamation against her.  *Id.*  Her damages for intentional interference arise from the injury that she suffered when the Defendants allegedly defamed her.  *See McIntosh v. E-Backgroundchecks.com, Inc.*, 2013 WL 1187038, No. 5:12-310-DCR (E.D. Ky. Mar. 20, 2013) (citing *Branham*, 350 Fed. App'x 35; *Kindoll v. Gonterman*, No. 2003-CA-002561-MR, 2005 386880 (Ky. Ct. App. Aug. 17, 2005) (upholding the application of a one-year statute of limitations for a tortious interference claim as it was based on an underlying defamation claim).  Accordingly, the one-year statute of limitations applies to this count.  As discussed above, however, the date of the alleged defamation is unclear.  The Court cannot say with confidence that Tucker's claim is indisputably time-barred.

However, substance of Tucker's claim compels its dismissal.  Tucker seeks to recover for interference with her own performance of her employment contracts.  (*See* Docket No. 1-1 at 12 ("As a result of the intentional interference by said Defendants, [Tucker's] position as a Police Office for the City of Princeton was terminated, and she was unable to fulfill her contractual obligations.").)  Although Kentucky law recognizes the tort of intentional interference, recovery under this theory is limited to situations in which a defendant causes a third party to breach its contract with the plaintiff.  *See CMI, Inc. v. Intoximeters, Inc.*, 918 F. Supp. 1068, 1079 (W.D. Ky. 1995).  The Commonwealth does not permit recovery for intentional interference with one's performance of her *own* contract.  *Id.* at 1079-80.  As this Court has explained, Kentucky is reluctant to adopt new business torts involving parties in contractual relationships.  *Id.* at 1080.  The Court does not anticipate that the Commonwealth's courts would do so under these circumstances.  Accordingly, Tucker's claim will be dismissed.

## IX.    The Court will permit Tucker's claim for intentional infliction of emotional distress to proceed.

Finally, the Court turns to Tucker's claim alleging outrageous conduct.  Tucker contends that Heaton, Lewis, Brock Thomas, West, Donna Thomas, and Weedman engaged in conduct that was "extreme and outrageous in that it was intentional, malicious, and grossly reckless, and it offends the

generally accepted standards of decency and morality." (Docket No. 1-1 at 13.)  She seeks damages to compensate her for this allegedly outrageous conduct.

Kentucky law recognizes the tort of outrageous conduct, also known as intentional infliction of emotional distress (IIED). *See Craft v. Rice*, 671 S.W.2d 247, 249 (Ky. 1984).  The Kentucky Supreme Court has adopted Section 46(1) of the Restatement (Second) of Torts, which provides that "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress . . . ." *Id.* at 251.   In recognizing the tort of intentional infliction of emotional distress, the Kentucky Supreme Court adopted a cause of action "for severe emotional distress, caused by truly outrageous behavior, where there was no remedy because the victim did not have an injury directly to his person or intangible personal attributes such as reputation." *Childers v. Geile*, 367 S.W.3d 576, 581 (Ky. 2012).

In rare occasions, an IIED claim can stand alone—but only if the alleged conduct was "intended only to cause extreme emotional distress in the victim." *Brewer v. Hillard*, 15 S.W.3d 1, 8 (Ky. Ct. App. 2000).   Generally speaking, it is a "gap-filler tort." *Childers*, 367 S.W.3d at 581.   That is, "[w]here the alleged conduct makes out a claim for another tort for which emotional distress damages are available, IIED is not a valid cause of action . . . ." *Farmer v. Dollar Gen. Corp.*, No. 4:11-CV-00027-JHM, 2012 WL 4364108, at *7 (W.D. Ky. Sept. 24, 2012) (citing *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 298-99 (Ky. App. 1993)).   IIED is not a valid cause of action where the alleged conduct makes out a claim for another tort for which emotional distress damages are available.  *See Banks v. Fritsch*, 39 S.W.3d 474 (Ky. Ct. App. 2001) (affirming a directed verdict for defendant on intentional infliction claim where plaintiff could theoretically recover emotional damages arising from false imprisonment, assault, or battery).   Accordingly, a plaintiff may not plead an intentional infliction of emotional distress claim if another tort also contemplates the emotional damages she seeks.

The Court is skeptical that Tucker's IIED claim will survive a motion for summary judgment, as she must offer evidence that Defendants acted solely to cause her extreme emotional distress.  Moreover, the facts that underlie this claim appear to be synchronous with those upon which she bases her malicious prosecution and defamation claims.  Emotional distress damages are available for each of these classic torts.  *See, e.g.*, *McCoy v. RWT, Inc.*, Nos. 2003-CA-002177-MR, 2003 –CA-002241-MR, 2005 WL 1593651 (Ky. Ct. App. July 8, 2005), *rev'd on other grounds*, 244 S.W.3d 44 (Ky. 2008) (explaining that an IIED claim was inappropriate because defamation and malicious prosecution allow for emotional damages).  However, given the liberal standard applied at the motion to dismiss phase, the Court will allow Tucker's claim to proceed through the discovery process.

## CONCLUSION AND ORDER

Defendants Rodney Heaton, Bobby Lewis, Brock Thomas, and Donna Thomas, in their official and individual capacities, and Caldwell County, Kentucky, having filed a motion for judgment on the pleadings, Plaintiff Abigail Tucker having responded and Defendants having replied, and the Court being otherwise sufficiently advised,

IT IS HEREBY ORDERED that in accordance with the reasons set forth above, Defendants' motion, (Docket No. 14), is GRANTED IN PART and DENIED IN PART.  The Court hereby DISMISSES Tucker's claims for conspiracy, defamation as to Heaton, malicious prosecution under federal law, and intentional interference with a known contractual relationship.  Tucker's claims for defamation against Lewis, invasion of privacy, malicious prosecution under state law, intentional infliction of emotional distress, and for violation of her civil rights may proceed.

IT IS SO ORDERED.